The opinion of the Court was delivered by
Harper, J.
We have no doubt but that the rule has been correctly settled by our Courts, that in case of a bequest of slaves for life, with remainder, the slaves born during the continuance of the life estate go to the remainder-man. The remainder-man has a present vested interest, though his possession *296 be postponed, and the issue belong to him, on the same ground that the absolute and exclusive owner of female slaves is entitled to the issue. It would be otherwise, indeed, if the issue of slaves could be considered in the nature of profits. The tenant for a limited time is entitled to the profits or use. But there is a distinction in the nature of things, and in the common understanding, which the civil law has adopted, between the issue of slaves and of animals. The profits of a flock or herd consist in the increase — the legatee of them cannot fully use them, without destroying individuals, — he may, therefore, take the increase, only keeping up the stock. If a blooded mare be given for a limited time, the intention .will be understood, that the donee may breed from her. All this has no application in the case of slaves, and the general rule of law applies, that the owner of the parent is entitled to the offspring.
In the present case, if there were nothing more than a mere bequest to Mrs. Tidyman of the slaves Elsy, Syphax and Mary, in remainder, after the life estate of Mr. Coífie, I should think her entitled to the issue, on the principle referred to. But the testator may make a different disposition, if he thinks proper, and separate the issue from the parent — and we think the words of this will do express such an intention. The bequest is of all the negroes included in the marriage settlement, ' “ except my wench Elsy, and her two children, Syphax and Mary, and all the issue and increase of the female slaves, to my beloved son, Major Samuel Charles Carne,” etc. The obvious signification of this is, to give to the legatee' all the negroes, with the exception of the individuals mentioned, and all the issue of the females without exception. I am aware that these words, “ issue and increase,” are sometimes used, in making a transfer or bequest of slaves, merely to signify the quantity of interest, and to import absolute property ; but they are not- necessary for that purpose. It is possible that they may have been so used in this instance. But it is to be observed that the testatrix does not use these words in her bequest to Mrs. Tidyman, but the *297 more appropriate ones limiting to executors and administrators, and we cannot conjecture a meaning for her, contrary to the plain import of the words themselves.
It has been thought that the case comes within the' principle of the cases of Haynesworth vs. Cox, Harp. Eq., 117, and Gayle vs. Cunningham, Harp. Eq. 124, which decide that the issue of a female slave, bom between the making of the will and the death of the testator, pass under a bequest of the mother. Though it may not be absolutely necessary to the decision of the present case, yet we have thought it of importance to the public, that the principles 'of those decisions should be re-examined. I believe that the profession and the public have not been fully satisfied with these decisions. We have examined them with the deference which is due to the respectable authority by which they were decided, and it seems to us that they involve a departure from the most firmly settled principles, and constitute an anomaly in our system, and may introduce further uncertainty. The first case was decided by three against the opinion of two of the judges of the late Court of Appeals. Under these circumstances, we feel it to be our duty respectfully to express our dissent from the principles of those decisions.
The true principle is a very simple and obvious one. Nothing passes under a bequest but what is included under the description of the subject of the bequest. We are not to conjecture a man to have given what he has not expressed his intention to give. It would be difficult to imagine how Joe (an adult when the bequest was to take effect,) and the two children of Mary, could be included under the description of “Elsy and her two children, Mary and Syphax.” The, cases do not distinctly put it on the ground, that they are accessories, according- to the meaning of the civil law, and it is plain that, even according ,to the civil law, they could not be so considered — -certainly they are not part'of the principal legacy.
What is said by Lord Hardwicke, in Downing vs. Townsend, Amb. 280, is quoted in the case of Gayle and Cunningham: “ The general rule as to testaments is, that the time of the *298 testament, not of the testator’s death, is .to be regarded; but that this rule admits of many distinctions and exceptions.” It is meant that the time of the testament is to be referred to, for the purpose of ascertaining what passes under the bequest. In general, the property which then answered the description, and which" the testator must' have had in his mind, is^to pass by the will. This admits of distinctions and exceptions \ but I cannot conceive that the present instance comes within any -of them. It is no exception when a piece of land is given, on which a house is afterwards built, or a house, to which columns and porticoes are added. The thing which answered the description at the time of the testament passes, and the accessions are inseparable from it. The case of the bequest of a flock can hardly be regarded as an exception. The flock is the same at the death of the testator as at the time of the testament, though the individuals composing it may be changed. It may be said, in general, that nothing but what answered the description' at the time of the testament will pass. This is sufficiently indicated in the case of all a testator’s pictures, or slaves, or personal estate. The aggregate of personal estate, in general, or of any particular description of personal estate, is of a fluctuating character — the constituent parts of it are changed from day to day — and a bequest of this sort is supposed to bear an analogy to that of a flock: the same estate or collection is given, though the parts of.it are changed. So in the case of the devise of a plantation, with the stock and slaves. A testator may, by his will, dispose of personal property," to be afterwards acquired; but he must, in some manner, express his intention to do so. If a female slave be given, with her issue, this will include all the issue she may have, up to the time of her death.
The construction in question, has been referred to the civil law. I am not at all disposed to detract from the merit which is ascribed to that admirable system. It is of excellent use to aid us where the common law is obscure or doubtful; not only as being the reason of enlightened men, but the source from which much of the common law is drawn. But still it is not *299 our law; the Court has no legislative power; and’ where the common law is not doubtful, we have no right to supersede it by provisions, which may appear to us better and more reasonable. But indeed I do not perceive that the rule referred to, is the doctrine of the civil law. With the exception of a single expression in the commentary of Vinnius, which may be of doubtful* interpretation, the various authorities relied on, do not appear to me to have relation to this matter:
“ Si quis ancillas cum suis natis leg aver iln etiamsi anciilcc mortuce fuerint, partus legato cedunt.”
‘‘ Hoc paragrapho et tribus sequentibus docetur, quid juris sit, si rei legatee, vivo testatore, vel decesserit aliquid vel acces-serit. Si aliquid decesserit, ita jus est ut ñeque legatum extin-guitur, nisi quod decessit, sit principóle, reliqupm accessorium; ñeque hieres leneatur supplere, quod decessit, sed preestatione ejus quod superest, liberetur. Hose res quatuor exemplis decía-ratur; legati ancillce cum suis natis; servorutn ordinariorum cum vicariis, hoc §■ legati gregis ; §. seq. legati peculii, §. 20. G aster um, ut dixi, ita quod superest, legato cedit; si id quoque principalitur legatum sit, non si ut accessio ejus, quod decessit: ■nam perempta re principali, etiam legatum accessionis extin-guitur; quod ostenditur hoc §. exemplo legati serví cum peculio; item fundi, cum instrumento legati. Si quid accesserit, placet etiam illud legato cedere: cujus rei tria exempla 'projeruniur, legati gregis, cui postea adjecta plura capita, §. seq. legati (jedium, quibus a.djectcc columnceet marmora, §. 19. legati peculii, cui deinde aliquid accedit, d. §. 20. Late autem hie locus patet. Nam hue etiam pertinent fructus, usuree, pensiones preediorum, partus, foetus, diluvio, insula in ccmfinio nata, et plura alia, quae hie non tangit Justinianus."
In speaking here of “ partus,” the issue of a female slave, as an instance of accession, it seems to me that Yinnius, has reference to the case put in the text, of the bequest of a female slave, expressly, with her children : in which case, if a child be born áfter the testament, and before testator’s death, no doubt it will be added to the legacy. And the passage which follows, *300 seems intended to prevent any chance of misconceiving his meaning. Speaking still of the bequest of a female slave with her children, he says: “ Poterat videri unum hie esse legatum principals; alterum, natorum scilicet accessorium: quod etiam Servio visum fait, qui oh id, mortua ancilla, negabat partumdeheri. Sed revera liberi matris accessio non sunt; statim enirn ut sunt editi, separatum plane habent existentiam, et ideo recte Paulus scribit, duo hie esse legata separata, hoc est ceque principaliaFinn, in Inst. Lib. 2. Tit. xx.
Certainly, if there be any such rule, it is plainly to be taken with great qualification, and confined to the case of an infant, to whom the care of the mother may be still necessary, and can never apply to a case like the present, where the issue are of mature age, at* the time when the devise is to take effect. Weight has properly been attributed 'to what is said by Sir Samuel ftomilly, in the case of Norris vs. Harrison, 2 Mad. R. 481: “ Suppose a female slave is bequeathed, and she has after-wards a son, who grows up to man’s estate, and then testator dies, does the bequest of the mother pass the son? or if a mare be bequeathed, which afterwards has a foal, that grows up to a horse, and then testator dies, does the gift of the mare pass also the horse? Surely not.” The expressions of Sir Samuel Romilly, are clear with respect to the son grown to manhood, or the colt grown to a horse; and there may be room to conjecture from his words, that a different rule would obtain, if they were still in infancy or immaturity. This is no more, however, than vague conjecture. The cases of Haynesworth vs. Cox, and Gayle vs. Cunningham, however, make no distinction of this sort, and it might be inferred from them, that though the children were grown up, or hdd families of their own, all must still pass under the bequest of the female ancestor. And indeed, by what authority could we make a distinction, and lay down any rule on the subject. Shall we say, that when the son has arrived at full manhood, he shall no longer pass as accessory to the mother ? or at the age of puberty, when the parent’s super-intendance may be less necessary ? or at the age of weaning, *301 when the mother’s care may be supposed no longer indispen-sible 1 In this uncertainty, we have only to resort to the rule of our own law, that nothing shall pass, which was not intended to be given. Considerations of humanity might be of weight in a doubtful case, but apart from the decisions in question, I cannot regard this as a doubtful case. It is little that legal decisions can do to enforce humanity: this must depend on public opinion, and I do not fear that a single infant will be left to perish by being prematurely separated fropn its mother, in consequence of our present determination.
The maxim u partus sequitur ventrem,” applies to the condition of these persons as slaves or free. It is a rule of property also, so far as to indicate, that the owner of the mother, and not of the father, shall be entitled to the children; but it can have no application to a disposition made by the owner, both of the parents and the children.
The principal case of Norris vs. Harrison, may serve to illustrate the rule, that the time of the testament is to be regarded in determining what passes under the bequest. In that case, the testator bequeathed £11,000 Bank Stock. After the making of the will, the’Bank, under the authority of an Act of Parliament, in respect of profits accumulated, declared an additional capital, by which the Stock was increased to £13,760, and it was held, that the additional £2,750, did not pass under the bequest. '
The decree of the Chancellor is reversed, so far as respects the slaves Joe, Amos and Nancy, children of Elsy and’ Mary.
JohNSon and O’Neall, JJ., concurred.

Decree reversed.